# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EDWARD J. BOURGEOIS**                           **CIVIL ACTION**

**versus**                                        **NO. 09-3185**

**DRUE BERGERON, WARDEN,**                         **SECTION: "F" (1)**
**SOUTH LOUISIANA CORRECTIONAL CENTER**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Edward J. Bourgeois, is a state prisoner incarcerated at the South Louisiana Correctional Center, Basile, Louisiana. On September 16, 1998, he was convicted of

attempted possession of heroin.[1]  On February 24, 1999, he pleaded guilty to being a multiple offender and was sentenced as such to a term of twenty years imprisonment without benefit of probation or suspension of sentence.[2]  On June 28, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed that conviction and sentence.[3]  The Louisiana Supreme Court then denied petitioner's related writ application on June 15, 2001.[4]

On June 12, 2002, petitioner filed with the state district court an application for post-conviction relief.[5]  That application was dismissed as untimely on June 19, 2002.[6]  In April of 2008, petitioner challenged that judgment by filing with the Louisiana Fourth Circuit Court of Appeal an application for a writ of review.[7]  On May 30, 2008, the Court of Appeal held that the district court erred in finding the application untimely; however, the Court of Appeal denied the writ application after reviewing petitioner's post-conviction claims "on the merits" and finding that he had "failed to demonstrate that he [was] entitled to relief."  The Court of Appeal made no mention of the fact

---

[1] State Rec., Vol. II of III, transcript of September 16, 1998, p. 114; State Rec., Vol. II of III, minute entry dated September 16, 1998.

[2] State Rec., Vol. III of III, transcript of February 24, 1999; State Rec., Vol. III of III, minute entry dated February 24, 1999.

[3] State v. Bourgeois, No. 99-KA-1409 c/w No. 99-KA-1410 (La. App. 4th Cir. June 28, 2008) (unpublished); State Rec., Vol. I of III.

[4] State v. Bourgeois, 793 So.2d 1236 (La. 2001) (No. 2000-K-2301); State Rec., Vol. I of III.

[5] State Rec., Vol. III of III.

[6] State Rec., Vol. III of III, Order dated June 19, 2002.

[7] State Rec., Vol. III of III.

that petitioner filed his writ application almost six years after the district court's judgment.[8]  On

March 6, 2009, the Louisiana Supreme Court then likewise denied petitioner's related writ

application without assigning additional reasons.[9]

On or about March 26, 2009, petitioner filed the instant application for federal *habeas*

*corpus* relief.  In support of his application, he claims:

1. Petitioner was subjected to an illegal search and seizure;

2. The trial judge should have recused himself due to his personal involvement in the case;

3. Petitioner was denied his right to a jury trial;

4. Petitioner was denied his right to compulsory process;

5. There was insufficient evidence to support petitioner's conviction;

6. Petitioner received ineffective assistance of counsel;[10] and

7. La.C.Cr.P. art. 930.8 is unconstitutional.

---

[8] State v. Bourgeois, No. 2008-K-0523 (La. App. 4th Cir. May 30, 2008) (unpublished); State Rec., Vol. III of III.

[9] State *ex rel.* Bourgeois v. State, 3 So.3d 480 (La. 2009) (No. 2008-KH-1332); State Rec., Vol. I of III.  The record reflects that, on December 30, 2006, petitioner also filed with the state district court a "Motion to Correct Illegal Sentence."  State Rec., Vol. I of III.  That motion was denied on March 5, 2007.  State Rec., Vol. I of III, Order dated March 5, 2007.

[10] In his federal application, petitioner lists four separate ineffective assistance claims.

<u>Timeliness</u>

The state argues that petitioner's federal application is untimely.[11] For the following reasons, this Court declines to recommend that the application be dismissed on that basis.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[12]

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on June 15, 2001. Therefore, under § 2244(d)(1)(A), his conviction became "final" no later than September 13, 2001, when his period expired for seeking a writ of certiorari from the United States Supreme Court. <u>See</u> <u>Roberts v. Cockrell</u>, 319 F.3d 690, 694 (5th Cir. 2003); <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999); <u>Chester v. Cain</u>, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); <u>see also</u> U.S. Sup. Ct. R. 13(1). Accordingly, his period for seeking federal <i>habeas corpus</i> relief commenced on that date and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-

---

[11] Rec. Doc. 15.

[12] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).

After two hundred seventy-one (271) days elapsed, petitioner tolled the federal limitations period on June 12, 2002, by filing a post-conviction application with the state district court.[13]  Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).

The state argues that tolling ceased in this case upon petitioner's failure to seek timely review of the trial court's judgment denying his post-conviction application.  It is clear that petitioner did not in fact seek review within thirty days as generally required by state law.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).  Instead, he waited almost *six years* after the trial court denied relief on June 19, 2002, before seeking such review by filing his writ application in April of 2008.

Considering that the Court of Appeal could not have failed to notice the extremely long delay between the time the state district court denied the post-conviction application and the time the related writ application was filed, it is unclear why that court failed to deny the writ

---

[13] That application was stamped as filed by the clerk of court on June 17, 2002.  However, the United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a state court filing, and so such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Petitioner's application was signed June 12, 2002; therefore, that is the earliest date it may be considered "filed."

application as untimely.  However, the writ application clearly was not denied on that basis; rather, the Court of Appeal expressly reviewed and rejected petitioner's post-conviction claims on the merits.[14]  Although this Court is of the opinion that petitioner should not benefit from such an unwarranted lack of diligence, federal jurisprudence arguably dictates otherwise.  In Grillette, the United States Fifth Circuit Court of Appeals faced a similar, albeit less egregious, scenario and held that tolling continued uninterrupted.  The Fifth Circuit held:

> [A]t no point did the state trial court or the Louisiana Court of Appeal fault Grillette for failure to comply with Rule 4-3.  Whereas in Melancon, the Louisiana Court of Appeal expressly indicated that Melancon's application "appeared untimely," in this case it is undisputed that the Louisiana Court of Appeal disposed of Grillette's application "on the merits," without any notation that his application was time-barred.  We acknowledge, as the State asserts, that a state court's consideration of an application "on the merits" is not by itself conclusive proof that the application was timely filed in accordance with that state's timeliness laws and rules and thus "pending."  See [Carey v.] Saffold, 536 U.S. [214,] 226, 122 S.Ct. 2134 [(2002)] (noting different reasons why a court might "address the merits of a claim that it believes was presented in an untimely way").  *Rule 4-3, however, prohibits the Court of Appeal from considering the merits of an application that is not filed with the appellate court within the original or extended return date, "in the absence of a showing that the delay in filing was not due to the applicant's fault."  Because the Court of Appeal did consider the merits of Grillette's application, it must have determined that the application was timely either because the trial court impliedly extended the return date and/or because the delay was not due to Grillette's fault.*
>
> Moreover, as Grillette correctly points out, when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions.  See, e.g., Carter v. Rhea, 785 So.2d 1022, 1022 (La.Ct.App. 4th Cir. 2001) ("WRIT APPLICATION DISMISSED AS UNTIMELY."); Lawyer v.

---

[14] Likewise, the Louisiana Supreme Court expressed no opinion on the timeliness issue when ruling on the related writ application.

> Succession of Kountz Through Cupit, 703 So.2d 233, 233 (La.Ct.App. 4th Cir. 1997) ("WRIT NOT CONSIDERED."); Watts v. Dorignac, 681 So.2d 955, 955 (La.Ct.App. 1st Cir. 1996) ("WRIT NOT CONSIDERED"). *Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion.*

Grillette, 372 F.3d at 775 (emphasis added).

While one could perhaps argue that the Fifth Circuit is too generous in its assumption that evident untimeliness is always noted without fail by the state courts, this Court may not unilaterally ignore the presumptions employed in Grillette. Therefore, out of an abundance of caution, the Court will toll the federal limitations period in the instant case from June 12, 2002, the date the post-conviction application was filed, until March 6, 2009, the date the Louisiana Supreme Court denied the related writ application.[15]

At that point, petitioner had ninety-four (94) days of the federal limitations period remaining. Because he filed his federal application a mere twenty (20) days later on March 26, 2009,[16] the application is timely. In light of that fact and the state's failure to raise any other procedural defenses, the Court will address the merits of petitioner's claims.

---

[15] The state does not argue that the Louisiana Supreme Court writ application was untimely.

[16] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner's federal application is undated, and there is no indication as to when it was delivered to prison authorities for mailing. However, it was metered on March 26, 2009, and, therefore, was "filed" no later than that date.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts

of this case as follows:

> Plaquemines Parish Sheriff's Officer Michael Navo, Jr.,
> testified that on 3 January 1998, he investigated a complaint from a
> resident of a townhouse double in a Belle Chasse neighborhood
> concerning loud noise and the smell of marijuana emanating from her
> neighbor's apartment. After speaking to the resident who lodged the
> complaint and verifying the odor of marijuana wafting from her
> neighbor's unit, Officer Navo decided to talk to the occupant of the
> dwelling from which the odor emanated. At that point, Officer Navo
> encountered the defendant sweeping the doorway of the apartment.
> The defendant told the officer that he did not live in the apartment but
> was visiting the occupant, Ms. Carol Smith. Officer Navo told the
> defendant and Ms. Smith he was investigating complaints of noise
> and suspicious odors and advised both suspects of their Miranda
> rights. Deputy David Walters, Jr., who assisted Officer Navo,
> conducted a patdown of the defendant's clothing and found a syringe
> in the defendant's shirt pocket. The syringe contained a small
> amount of brownish liquid.[FN] Ms. Smith denied the presence of
> contraband and invited the officer to search her apartment. Upon
> entering the apartment, Officer Navo noticed various items of
> contraband and drug use paraphernalia in plain view, which prompted
> him to obtain a search warrant. A search pursuant to the warrant
> yielded syringes, needles, spoons, tourniquets and marijuana in
> various locations throughout the apartment and heroin discovered in
> a brown box in Ms. Smith's bedroom. Pursuant to Officer Navo's
> interrogation, Ms. Smith admitted using heroin earlier in the day and
> identified the defendant as a friend and fellow drug user who came
> to her apartment to get high. The defendant's responses to Officer
> Navo's questions indicated that he went to Ms. Smith's apartment for
> sexual relations and "junk", and that the syringe recovered from his
> pocket contained heroin. Officer Navo documented "fresh"
> (containing dried blood) i.v. track marks on both suspect's arms by
> photography and identified the photographs at trial.

– 9 –

[FN] The brown fluid in the syringe field-tested positive for the presence of heroin.

Deputy David Walters, Jr. testified, reiterating Offiver Navo's testimony. Deputy Walters noticed fresh iv. track marks on the defendant's forearm when he was arrested.

Edgar M. Dunn, a forensic chemist employed by the Jefferson Parish Sheriff's Office, testified that various drug paraphernalia seized from Ms. Smith's apartment tested positive for the presence of heroin. However, the syringe confiscated from the defendant tested negative for controlled dangerous substances.

Sgt. Warren J. Gilbert of the Plaquemines Parish Sheriff's Office testified that from his experience as a narcotics officer, the use of items such as spoons in conjunction with syringes and tourniquets can indicate heroin use.

Carol Smith testified on behalf of the defense. She stated that the defendant came to her house on January 3, 1998, to help her clean her apartment. She testified that she used heroin earlier in the day and asked the defendant to dispose of her syringe. He put the syringe in his pocket intending to put it in the trash when he took her Christmas tree outside. She denied that the defendant injected heroin while at her apartment. She stated that the syringe tested negative for heroin because she flushed it with water and vinegar, a practice routinely employed to protect her children.[17]

## Illegal Search and Seizure

Petitioner's first claim is that he was subjected to an illegal search and seizure. In the state post-conviction proceedings, that claim was found to be without merit.[18]

---

[17] State v. Bourgeois, No. 99-KA-1409 c/w No. 99-KA-1410, at pp. 1-3; State Rec., Vol. I of III.

[18] State v. Bourgeois, No. 2008-K-0523 (La. App. 4th Cir. May 30, 2008), writ denied, 3 So.3d 480 (La. 2009); State Rec., Vol. III of III.

This Court is barred from reviewing that claim by Stone v. Powell, 428 U.S. 465 (1976).[19]  In Stone, the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."  Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).  Interpreting Stone, the United States Fifth Circuit Court of Appeals has clearly held:

> An "opportunity for full and fair litigation" means just that:  an opportunity.  If a state provides the *processes* whereby a defendant *can* obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim *whether or not the defendant employs those processes.*

Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978) (emphasis added).  Therefore, the Stone bar applies in those cases where no motion to suppress was ever filed.  Id. at 1192-93.  The Stone bar also applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous.  Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

"It is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  Bailey v. Cain, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007).  Moreover, petitioner's Fourth Amendment claim was expressly

---

[19] In the instant case, because the state's response addressed only the timeliness of petitioner's federal application, the state has not raised the Stone bar.  Nevertheless, the United States Fifth Circuit Court of Appeals has held that the Stone bar may be raised by the Court.  Davis v. Blackburn, 803 F.2d 1371, 1372-73 (5th Cir. 1986).  The undersigned, through this Report and Recommendation, hereby places petitioner on notice that the Stone bar is being invoked *sua sponte*.

considered and rejected on the merits by the state courts.  Accordingly, <u>Stone</u> prohibits relitigation of that claim in this federal proceeding.

Failure to Recuse

Petitioner next claims that the trial judge should have recused himself due to his personal involvement in the case.  Specifically, petitioner contends that recusal was warranted because the trial judge issued the search warrant in the case.  In the state post-conviction proceedings, that claim was found to be without merit.[20]

Federal *habeas corpus* relief is not warranted unless petitioner can show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  In this case, petitioner does not identify a United States Supreme Court ruling which holds that a judge must recuse himself simply because he issued a prior search warrant in the case, and this Court is aware of no such ruling.  Where the jurisprudence of the United States Supreme Court does not clearly support a petitioner's claim, it cannot be said that a state court's ruling impermissibly ran afoul of "clearly established Federal law" for purposes of § 2254(d)(1). <u>See</u> <u>Wright v. Van Patten</u>, 128 S.Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."); <u>Gilson v. Leblanc</u>, Civ. Action No. 08-4833, 2009 WL 2046166, at *3

---

[20] <u>State v. Bourgeois</u>, No. 2008-K-0523 (La. App. 4th Cir. May 30, 2008), <u>writ denied</u>, 3 So.3d 480 (La. 2009); State Rec., Vol. III of III.

(E.D. La. July 14, 2009). Accordingly, pursuant to the AEDPA's deferential standard, petitioner's claim must be rejected.[21]

## Denial of a Jury Trial and Compulsory Process

Petitioner next claims that he was denied his right to a jury trial. He also claims that he was denied his right to compulsory process because subpoenas were not issued for Carol Smith and Judge William Roe to testify at the suppression hearing. However, petitioner, on the advice of counsel, waived his right to trial by jury, and defense counsel chose not to subpoena Smith and Roe. Accordingly, petitioner was not *denied* these rights, and his claims can therefore be analyzed only as *ineffective assistance* claims. However, for the reasons explained later in this opinion, counsel was not ineffective in advising petitioner to waive his right to a jury trial or in failing to subpoena Smith and Roe for the suppression hearing.

## Sufficiency of the Evidence

Petitioner next claims that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> This court set out the standard for reviewing convictions for sufficiency of the evidence in State v. Nogess, 98-0670 (La. App. 4 Cir. 3/3/99), 729 So.2d 132, as follows:
>
> > In evaluating whether the evidence is constitutionally sufficient to support a conviction, an

---

[21] Moreover, it is clear that courts have generally rejected petitioner's underlying contention. See, e.g., In re Osborn, 376 F.2d 808, 810 (6th Cir. 1967) ("The fact that a Judge may authorize the issuance of a search warrant upon a showing of probable cause, does not disqualify him from later hearing the case."); United States v. De Castro-Font, 587 F.Supp.2d 353, 363 (D.P.R. 2008) ("[A] judge need not disqualify himself or herself for having some familiarity with a case gained from authorizing wiretaps and search warrants.").

appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4th Cir. 1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La. 1992) at 1324.

In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond all reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La. 1987).

98-0670, pp. 8-9, 729 So.2d at 136-137.

To prove a defendant attempted to possess a controlled dangerous drug, the State must prove that the defendant committed an act tending directly toward the accomplishment of his intent, i.e. possession of the drugs. State v. Chambers, 563 So.2d 579 (La. App. 4th Cir. 1990). Moreover, the State need only establish constructive possession, rather than actual or attempted actual possession, to support an attempted possession conviction. State v. Jackson, 557 So.2d 1034 (La. App. 4th Cir. 1990). A person found in the area of the contraband can be considered in constructive possession if illegal substance is subject to his dominion and control. State v. Trahan, 425 So.2d 1222 (La. 1983).

In the instant case, the arresting officer testified that he observed contraband in plain view when he entered Ms. Smith's apartment. A subsequent warrant search produced drug paraphernalia including syringes and needles, as well as several packets of heroin in Ms. Smith's bedroom. The defendant had a syringe in his pocket when arrested and candidly admitted to the officers that he went to Ms. Smith's house for sex and drugs. Moreover, arresting officers documented fresh i.v. track marks on the defendant's forearm at the time of his arrest. The totality of the facts and circumstances in this case support a finding that the defendant committed overt acts sufficient to constitute an attempt to possess heroin.[22]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[23]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6,

---

[22] State v. Bourgeois, No. 99-KA-1409 c/w No. 99-KA-1410, at pp. 3-5; State Rec., Vol. I of III.

[23] State v. Bourgeois, 793 So.2d 1236 (La. 2001) (No. 2000-K-2301); State Rec., Vol. I of III.

1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing.

Under federal law, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in a federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008).

The testimony and physical evidence presented in the instant case, viewed in the light most favorable to the prosecution, were clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States. Accordingly, this Court must defer to the state court's decision rejecting that claim.

## Ineffective Assistance of Counsel

Petitioner next claims that his trial counsel was ineffective. In the state post-conviction proceedings, that claim was found to be without merit.[24]

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>Id</u>. at 697. Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the

_____

[24] <u>State v. Bourgeois</u>, No. 2008-K-0523 (La. App. 4th Cir. May 30, 2008), <u>writ denied</u>, 3 So.2d 480 (La. 2009); State Rec., Vol. III of III.

reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's ineffective assistance claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case and that, therefore, this federal court should defer to the state court's ruling.

Petitioner first claims that defense counsel was ineffective for failing to challenge the allegedly illegal search and seizure. As previously noted, Fourth Amendment violations are not generally cognizable on federal *habeas* review; however, a *habeas* petitioner is not precluded from asserting an ineffective assistance claim based on defense counsel's purported failure to competently litigate a Fourth Amendment claim. Kimmelman v. Morrison, 477 U.S. 365 (1986). That said, such a Sixth Amendment claim nevertheless still requires at its foundation a *meritorious* Fourth Amendment issue before relief is warranted. Id. at 375, 382.

In the instant case, petitioner has not demonstrated that his Fourth Amendment rights were violated. Defense counsel in fact filed a filed a Motion to Suppress Evidence, moving "to suppress the use of evidence herein presently in possession of the State, on the grounds that said evidence and objects were obtained by an unconstitutional search and seizure."[25] An evidentiary hearing was held on March 4, 1998, at which time the motion was denied.[26]

Although Navo's testimony from that suppression hearing has not been transcribed, the Court notes that he also testified under oath at trial regarding the circumstances of the procurement of the warrant. Navo testified that when he arrived at Smith's apartment, "the door was all the way open to the house."[27] He explained that he needed to talk to her and asked if he could

---

[25] State Rec., Vol. II of II, Motion to Suppress Evidence.

[26] State Rec., Vol. II of III, minute entry dated March 4, 1998.

[27] State Rec., Vol. II of III, transcript of September 16, 1998, p. 27.

enter.  Upon entering the living room, Navo explained why he was there, he advised Smith and petitioner of their rights, and they indicated they understood those rights.[28]  Navo testified:

> A  At that time, [Smith] said, "I don't have any drugs in my house.  You all can search."  And while I am sitting there having a conversation with Mrs. Smith, that is when I was glancing around and I observed a clear plastic bag, a small plastic bag containing vegetable matter in it that was just sitting on the coffee table.  I didn't tell her anything then.  At that time, I basically advised them that we have an investigation, a narcotics investigation going on and that there were possible drugs in plain view at that time.  I asked her if I could use the telephone – I asked if I could use the telephone and she said that I could.  And when I was going to the kitchen area where she led me to to the telephone, there were some other drug paraphernalia items in plain view on the way to the telephone.  I went to use the phone[.]

> Q  What were those items?

> A  They were fingers of a surgical glove.  Not the whole glove.  The fingers were cut off of a surgical rubber glove.  And they had, I believe, a razor blade and a green – a little Ziploc baggie maybe.[29]

Navo continued:

> A  At that time, we had enough probable cause to effect an immediate arrest, but I wanted to go further with the possibility of more contraband in the house.  I contacted the Honorable William Roe and through a phone conversation, I told him the basis of the investigation up to date of what I had with the information and also with what was found in plain view and asked if that was enough for a warrant and if he could issue a search warrant.  He said basically, "Type it up and bring it over and I will review it."  And –

> Q  Did you do that?

> A  Yes, sir.

> Q  Did you subsequently bring it to Judge Roe?

---

[28] State Rec., Vol. II of III, transcript of September 16, 1998, pp. 27-28.

[29] State Rec., Vol. II of III, transcript of September 16, 1998, p. 30.

A        Yes, sir.

Q        Did you obtain a search warrant executed by him?

A        Yes, sir, I did.

Q        Signed by him?

A        Yes, sir.[30]

Deputy David Walters also testified at trial. He likewise stated that Smith gave

consent to enter the apartment and that drugs and paraphernalia were in plain view:

A        Agent Navo had identified himself and me as Deputy Sheriff's with the
         Sheriff's Office. I am not exactly, but I think he told [Mr. Bourgeois] the
         Sheriff's Office. He explained to him why we were at the house. Mr.
         Bourgeois, I don't recall him saying anything and Agent Navo had seen Ms.
         Carol Smith inside of the house and he had asked if he could go into the
         house and she invited us in and Agent Navo explained to her why we were
         there and what Ms. Kim Wood had complained of. While we were inside of
         the house, Agent Navo observed a corner of a clear plastic bag containing
         some vegetable matter, which did test positive for marijuana. He advised
         Ms. –

Q        Did you observe the same bag?

A        Yes, I did.[31]

In the instant case, the officers initially had no warrant to enter Smith's apartment.

However, the absence of a warrant at that point was of no moment, because Smith freely and

voluntarily gave the officers permission to enter and even to search her apartment. That consent

---

[30] State Rec., Vol. II of III, transcript of September 16, 1998, pp. 32-33.

[31] State Rec., Vol. II of III, transcript of September 16, 1998, pp. 59-60.

rendered the officer's entry into the apartment lawful. As the United States Supreme Court has explained:

> The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises.

Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (citations omitted).

Moreover, even if the officers had not been granted consent to conduct a search, the discovery of the drugs and paraphernalia prior to the procurement of the warrant poses no constitutional problem because, having been granted permission to enter the premises, the seizure of those items was also lawful under the "plain view" doctrine. That doctrine is one of the "specifically established and well-delineated exceptions" that may justify a warrantless seizure. Arizona v. Hicks, 480 U.S. 321, 326 (1987) ("It is well established that under certain circumstances the police may seize evidence in plain view without a warrant."). The United States Fifth Circuit Court of Appeals has explained:

> The "plain view" doctrine will justify a warrantless seizure if: (1) the officers lawfully entered the area where the items were located; (2) the items were in plain view; (3) the incriminating nature of the items was "immediately apparent"; and (4) the officers had a lawful right of access to the items.

United States v. Buchanan, 70 F.3d 818, 825 (5th Cir. 1995). Those requirements were obviously met here, in that the officers had Smith's consent to be in her apartment, the drugs and paraphernalia were in plain view on the coffee table and in the kitchen, the incriminating nature of the items was obvious, and the officers had a lawful right of access to the items.

After seeing the drugs and paraphernalia in plain view, the officers then clearly had probable cause to obtain a search warrant to conduct the more thorough subsequent search. Further, they did in fact obtain such a warrant, and there is simply no evidence whatsoever that the warrant was obtained in an unlawful manner or was in any way defective. Therefore, the evidence seized in the subsequent search likewise poses no constitutional problem.

In light of the foregoing, it is obvious that there was no Fourth Amendment violation in this case. Therefore, necessarily, petitioner cannot demonstrate that his counsel was ineffective in his litigation of the Fourth Amendment issue.

In a related claim, petitioner argues that defense counsel was ineffective for failing to subpoena the trial judge and Carol Smith to testify at the suppression hearing. That contention fares no better. As to the trial judge, his only involvement was to issue the search warrant. There is no evidence whatsoever that warrant was improperly procured or issued, and, therefore, there was no need or legal basis to call the judge as a witness. As to Smith, petitioner cannot demonstrate that any prejudice resulted from failing to call her at the suppression hearing. Even if the Court assumes that she would have testified that she did not consent to the officers entering the house, that self-serving testimony would have been contradicted by Navo's testimony and, if necessary, Walters' testimony. There is simply no reason to believe that the result of the suppression hearing would have been different if only Smith had been called to testify.

Petitioner next claims that defense counsel was ineffective for failing to move to recuse the trial judge on the ground that he issued the search warrant in the case. As previously explained, the fact that the trial judge issued the search warrant was not a basis for his recusal or

disqualification. Accordingly, any motion for recusal would have been meritless. Counsel cannot be considered ineffective in failing to file a meritless motion. United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

Petitioner also claims that defense counsel was ineffective for advising petitioner to waive his right to a jury trial. However, the United States Fifth Circuit Court of Appeals has held that a petitioner is not entitled to federal *habeas corpus* relief based on such a claim unless he demonstrates that a different factfinder, i.e. a jury, would have rendered a different verdict. Wiltz v. Louisiana, No. 94-30017, 1994 WL 286254, at *5 (5th Cir. June 22, 1994); Green v. Lynaugh, 868 F.2d 176, 178 (5th Cir. 1989). Petitioner has made no such showing, and, therefore, his claim fails.

In summary, petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, the AEDPA's deferential standard requires that this Court likewise reject those claims.

## Constitutionality of La.C.Cr.P. art. 930.8

Lastly, petitioner argues that La.C.Cr.P. 930.8 is unconstitutional because it imposes a limitations period for the filing of state post-conviction applications. Relief is not warranted based on that claim for at least two reasons.

First, petitioner was not ultimately denied review based on La.C.Cr.P. 930.8. Although the state district court invoked that provision in denying petitioner's post-conviction application as untimely, that ruling was overturned by the Court of Appeal, and petitioner's claims were reviewed on the merits.

Second, in any event, petitioner's contention clearly has no merit. See United States ex rel. Dopkowski v. Randolph, 262 F.2d 10, 12 (7th Cir. 1958) ("The law is well settled that a state may attach reasonable time limitations to the assertion of federal constitutional rights ...."); United States ex rel. Barksdale v. Lane, No. 89 CV 4068, 1989 WL 135199, at *2 (N.D. Ill. Nov. 1, 1989) ("Since states have no obligation to provide for post-conviction relief of any form, there is no inherent right to a certain time period for seeking such relief.") (citations omitted), aff'd, 957 F.2d 379 (7th Cir. 1992); State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995) ("Our analysis of the United States Supreme Court's decisions ... convinces us that the United States Constitution does not require states to provide post conviction remedies for persons convicted in state courts so long as the states have provided some avenue of direct review of the conviction. Accordingly, if a state's failure to provide any post conviction relief procedure at all does not violate the Fourteenth Amendment Due Process Clause, then a fortiori, Art. 930.8, a state statute which merely limits an inmate's avenues for state post conviction relief, cannot violate that clause.").

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Edward J. Bourgeois** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-sixth day of October, 2009.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**